DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-cv-88-FDW

| | |
|---|---|
| CHARLES EDWARD HUMPHRIES, JR., | ) |
| Plaintiff, | ) |
| vs. | ) **ORDER** |
| JIMMY ASHE, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on Defendant Chip Hall's Motion to Dismiss for Failure to State a Claim, (Doc. No. 15).

## I. BACKGROUND

Pro se Plaintiff Charles Edward Humphries, Jr., is a North Carolina prisoner currently incarcerated at the Orange Correctional Center in Hillsborough, North Carolina. On May 4, 2015, Plaintiff filed the instant Complaint pursuant to 42 U.S.C. § 1983, naming the following persons as Defendants: (1) Jimmy Ashe, identified as the Sheriff of Jackson County[1]; (2) Chip Hall, identified as Chief Deputy with the Jackson County Sheriff's Department; (3) Charles Brandon Hooper, identified as a Jackson County Sheriff's Deputy and "Supervisor of Work Crew"; (4) Matt Helton, identified as a Lieutenant with the Jackson County Sheriff's Department; (5) Sheila Aiken, identified as a Lieutenant with the Jackson County Sheriff's Department; (6) Brian Wellmon, identified as a Sergeant with the Jackson County Sheriff's Department; (7) FNU Deweese, identified as a doctor with the Jackson County Detention Center;

---

[1] Defendant Ashe is no longer Sheriff of Jackson County, as Defendant Hall took office as Sheriff on December 1, 2014.

and (8) Jane Doe, identified as an "unknown lady at church." (Id. at 8-11).

Plaintiff alleges that on September 2, 2009, while he was incarcerated as a pre-trial detainee at the Jackson County Detention Center in Sylva, North Carolina, he fell off a ladder at a church while on work detail and was seriously injured. (Doc. No. 1 at 14). Plaintiff alleges that, immediately after the fall, he was taken to Harris Regional Hospital in Sylva, North Carolina, where doctors determined that Plaintiff needed left arm surgery. (Id. at 15). Dr. Lawrence Supik (not a Defendant) performed the surgery, which required steel pins and oral fixators. (Id.).

The following day, September 3, 2009, Dr. Supik ordered a CT scan, which revealed an acute compression fracture of the L1 vertebrate. (Id.). Dr. Supik arranged the design and construction of a custom back brace, with orders for Plaintiff to wear it for the next three months. (Id.). The next morning, September 4, 2009, Defendant Lieutenant Helton arrived at the hospital. (Id.). Defendant Helton and Defendant Sergeant Wellmon spoke with Dr. Supik, who then told Plaintiff that he was being discharged to go to another hospital. (Id.). Plaintiff was discharged a few hours later with orders and instructions for the after care for his injuries, along with several prescriptions for medications for pain and other symptoms. (Id. at 17).

Plaintiff was released to the care of Defendant Dr. Deweese, the physician at the Jackson County Detention Center. (Id.). Detention center officers Jeff Powell and Jessica Beasley transported Plaintiff from the hospital back to the Jackson County Detention Center, with all relevant after care and discharge orders. (Id.). Defendant Lieutenant Sheila Aikens was waiting outside the Detention Center sally port. (Id.). She instructed officers Powell and Beasley to house Plaintiff in the front "holding cell." (Id.). Plaintiff asked Aikens how long he would have to stay in the holding cell. (Id.). She responded, "Until tomorrow." (Id.). Plaintiff protested, to

which Aikens responded, "This is a jail, not a hospital." (Id.). Plaintiff alleges that he was forced to sleep on a concrete floor with only one thin, plastic jailhouse mat. (Id. at 18).

Plaintiff alleges that the pain medications prescribed by Dr. Supik were not administered until around 10 or 11 p.m., and that he was denied his pain medications for around twelve hours. (Id.). Plaintiff alleges that, at around 4 or 5 p.m., after his continued requests for pain medications, Dr. Deweese arrived at Plaintiff's holding cell with 800 milligrams of Ibuprofen. (Id.). Plaintiff asked Dr. Deweese when he would receive the pain medications prescribed by Dr. Supik. (Id.). Dr. Deweese told Plaintiff, "We're busy, we'll get to it whenever we get time." (Id.). Plaintiff then asked Dr. Deweese if he could move him to some place with a bunk or bed. (Id.). Dr. Deweese replied, "You'll be fine, just tough it out," and then he walked away and did not visit Plaintiff again. (Id.).

On September 5, 2009, Defendant Wellmon transported Plaintiff to Central Prison Hospital in Raleigh, North Carolina. (Id. at 19). Plaintiff alleges that he was transported to Raleigh in the back of a small car for around six hours, with no provisions made to relieve him of the confines of his shackles. (Id.). When Plaintiff complained of the increased pain, Wellmon said, "I didn't bring your medicine. You're not my problem anyways." (Id.).

Plaintiff was housed at Central Prison for about one month, where he was under the care of Dr. Diehl (not a Defendant), an orthopedic specialist. (Id.). Plaintiff's pins and rods became infected. Dr. Diehl removed one pin that was severely infected, prescribed Keflex, an antibiotic, and then gave orders for the pin sites to be cleaned daily. (Id.). On Friday October 2, 2009, Plaintiff was returned to the Jackson County Detention Center to await his criminal trial. (Id.). North Carolina Department of Public Safety records show that on October 8, 2009, Plaintiff was convicted of various state crimes in Transylvania County. Plaintiff alleges that, while being held

3

at the Jackson County Detention Center pending trial, he was forced to sleep in the same holding cell as before, on a thin mat with no bunk, despite that he had severe infections from open wounds. (Id.). Plaintiff alleges that Defendants did not follow Dr. Diehl's orders to clean Plaintiff's wounds properly. (Id. at 20). Plaintiff alleges that Defendants also refused to provide Plaintiff with any provisions such as an extra mat or blanket to relieve Plaintiff of his suffering. Plaintiff alleges that the injuries from the fall have resulted in three separate surgeries on his left arm, leaving it about a half inch shorter, with metal plates, screws, permanent scarring, and loss of motion. (Id.). Plaintiff alleges that he also suffers from an acute fracture of the L1 vertebrate, and the herniated disc of his lower back, "[a]ll of which are direct results of Defendants' negligence." (Id.).

Plaintiff purports to bring claims against Defendants under the Fourteenth Amendment based on alleged deliberate indifference to serious medical needs, as well as state law claims of negligence, assault, and battery. Plaintiff also alleges that, before the accident, he was subjected to involuntary servitude by Defendants Ashe and Hall because he was forced to do a work detail without remuneration while he was a pre-trial detainee. Plaintiff alleges that the Sheriff's work crew was "routinely used to perform of the grounds keeping of the Sheriff's personal church and the pastor's residence"; that "not all jobs we performed benefitted the city, county, or state of North Carolina," and that "some jobs benefitted private citizens." (Id. at 12). Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages. Plaintiff also seeks payment "for hours worked on 'Sheriff's Work Crew' from May – September 2, 2009." (Id. at 24).

Plaintiff raised the same claims in an action filed in this Court on August 21, 2012, and this Court dismissed the action for failure to exhaust administrative remedies on September 4,

2014.  See (Civ. No. 2:12cv66 (W.D.N.C.)).  Plaintiff appealed and on March 19, 2015, the Fourth Circuit Court of Appeals affirmed this Court's dismissal.  (No. 14-7387 (4th Cir., filed Mar. 19, 2015).

On November 17, 2015, Defendant Hall filed the pending motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Defendant contends that each of Plaintiff's claims is barred by the applicable statute of limitations and/or the doctrine of laches.

## II. STANDARD OF REVIEW

Because there is no explicit statute of limitations for actions brought pursuant to 42 U.S.C. § 1983, courts look to the personal injury statute of limitations from the relevant state.  Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (citing Wilson v. Garcia, 471 U.S. 261, 266-69 (1985)).  Although the statutory limitations period for Section 1983 actions is borrowed from state law, "[t]he time of accrual of a civil rights action is a question of federal law."  Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975).  "Federal law holds that the time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action."  Id.; see Urie v. Thompson, 337 U.S. 163, 170 (1949) (noting that "statutes of limitations . . . conventionally require the assertion of claims within a specified period of time after notice of the invasion of legal rights"); Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir. 1983) (noting that the statute of limitations "does not begin to run until the plaintiff discovers, or by the exercise of due diligence should have discovered, the facts forming the basis of his cause of action").

## III. DISCUSSION

In support of the motion to dismiss, Defendant Hall contends that Plaintiff's claims are barred by the applicable statute of limitations. The Court agrees.[2] In North Carolina, the statute of limitations for personal injuries, including Plaintiff's claims for deliberate indifference, involuntary servitude, negligence, assault, and battery is three years. See N.C. GEN. STAT. § 1-52(16). See Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1161-62 (4th Cir. 1991) (holding that N.C. GEN. STAT. 1-52 applies to Section 1983 claims); see also Manliguez v. Joseph, 226 F. Supp. 2d 377, 386 (E.D.N.Y. 2002) (finding that the state's applicable three-year statute of limitations for personal injuries actions applied to the plaintiff's claim for involuntary servitude under 18 U.S.C. § 1584). Moreover, under N.C. GEN. STAT. § 1-52(13), the statute of limitations for claims against public officers acting under color of office is also three years.

The underlying conduct giving rise to all of Plaintiff's claims occurred in 2009, and Plaintiff does not allege any type of continuing violation as to his claims. Rather, the allegations in the Complaint relate to alleged conduct by Defendants in the days and weeks immediately after the 2009 accident. At the latest, Plaintiff would have been on notice of all of his claims against Defendants by October 2009. The three-year statute of limitations, therefore ran, by October 2012. Plaintiff did not file this action until 2015. The Court agrees with Defendant that Plaintiff's claims are barred by the applicable statute of limitations.

In opposing the motion to dismiss, Plaintiff first contends that the statute of limitations

---

[2] Because Plaintiff's claims are barred by the statute of limitations, the Court does not consider whether they are also barred by the doctrine of laches. In any event, the doctrine of laches does not appear to apply because laches is an equitable defense not available in an action at law. See Cater v. Barker, 172 N.C. App. 441, 617 S.E.2d 113, 118 (2005).

should be tolled during the pendency of exhaustion of his administrative remedies. Although the Fourth Circuit has not addressed the issue, some circuits have concluded that, since the PLRA requires a prisoner to exhaust administrative remedies before commencing a civil rights action, the court should toll the statute of limitations during the exhaustion process. See Kelly v. White, C/A No. 4:10-982-JFA-TER, 2011 WL 939015, at *2 (D.S.C. Mar. 16, 2011) (unpublished) (collecting cases). Even in the jurisdictions that allow tolling during the exhaustion of administrative remedies, however, the statute of limitations is only tolled while a prisoner is "actively exhausting his administrative remedies." Gonzalez v. Hasty, 651 F.3d 318, 323-24 (2d Cir. 2011). As another court explained it, "[i]n other words, the statute is not tolled during 'the anterior time period in between the accrual of the claim and when the prisoner initiated the administrative remedy process.'" Doe v. Selsky, 948 F. Supp. 2d 306, 309 (W.D.N.Y. 2013) (quoting Gonzalez v. Hasty, 651 F.3d at 322 n.2) ("For example, if an inmate's claim accrues on January 1, 2010, and the inmate does not begin pursuing administrative remedies until December 1, 2010, any subsequent tolling that may be applicable would not include this eleven month period.").

Here, the events giving rise to Plaintiff's claims occurred in September and October 2009. Plaintiff then waited almost three years, or until August 21, 2012, to file his first action. As of that date, Plaintiff had not exhausted his administrative remedies, nor had he even initiated the process of exhausting his administrative remedies.[3] Thus, tolling was not warranted. The

---

[3] By Plaintiff's own accounts, and based on his pleadings in this action, he filed his first-ever grievance arising from his claims on August 16, 2014. See (Doc. No. 1 at 3). In the administrative remedies section of the Complaint in this action, Plaintiff attached a grievance dated August 16, 2014, in which he complains about the incident giving rise to his claims. He states that Jackson County Detention Center officials never responded to the grievance.

statute of limitations began to run in October 2009 at the latest, and it ran uninterrupted until October 2012.

In support of his argument for tolling the statute of limitations, Plaintiff reasserts various arguments he made in his first action, which this Court dismissed for failure to exhaust administrative remedies. In his earlier action, Plaintiff initially maintained that he did not exhaust his administrative remedies because the Jackson County Detention Center did not have a grievance system and because he had been transferred away from the center. (Civ. No. 2:12cv66 (W.D.N.C.)). Specifically, Plaintiff stated in his administrative remedies statement that "[t]here are no grievance procedures at the correctional facility where I was being confined" and that the "cause of action arose at Jackson County Jail in Sept. 2009, and I am now being housed at [Mountain View Correctional Institution]. Therefore, I do not believe I have administrative remedies available at this time." (Id., Doc. No. 4 at 1).

In response to Plaintiff's statement that he did not exhaust his administrative remedies because the Jackson County Detention Center had no grievance procedures, this Court entered an order requiring the Jackson County Detention Center to inform the Court whether it a grievance procedure in place at the time of Plaintiff's accident. The county thereafter submitted a statement to the Court that the detention center did, in fact, have a grievance system in place at the time of Plaintiff's accident on September 2, 2009. (Id., Doc. No. 16). This Court subsequently dismissed Plaintiff's action for failure to exhaust administrative remedies, and the Fourth Circuit Court of Appeals subsequently affirmed this Court's dismissal for failure to exhaust. (Id., Doc. Nos. 18; 25). The Court has already addressed, and decided against Plaintiff, the issue of whether the detention center had a grievance procedure in place at the time of Plaintiff's accident.

Plaintiff also argues in his response to the motion to dismiss that, immediately after the accident in September 2009, he was transferred away from the Jackson County Detention Center. He contends that he, therefore, never had an opportunity to exhaust his administrative remedies. Plaintiff's own allegations in his Complaint, however, show that he was transported back to the Jackson County Detention Center on October 2, 2009, where he remained until he was convicted on October 8, 2009. (Doc. No. 1 at 9). Thus, he had the opportunity at that point to submit a grievance to initiate the administrative remedies process, but he failed to do so.

In sum, for the reasons stated herein, Plaintiff's claims are barred by the applicable statute of limitations.

The Court further finds that equitable tolling is not warranted in this case. Plaintiff has simply not been diligent in pursuing his rights to his claims in this action. First, he waited until almost three years after the accident to file his first action. Then, when that one was dismissed for failure to exhaust administrative remedies, he waited another nine months to file this lawsuit, more than five and a half years after the initial accident occurred giving rise to his claims. The circumstances of this case simply do not warrant equitable tolling.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff's claims will be dismissed as barred by the applicable statute of limitations.

**IT IS, THEREFORE, ORDERED** that:

(1) Defendant's Motion to Dismiss, (Doc. No. 15), is **GRANTED**, and this action is **DISMISSED** with prejudice.

(2) The Clerk is directed to terminate this action.

Frank D. Whitney
Chief United States District Judge